LAURA E. DUFFY
United States Attorney
SHERRI W. HOBSON
Assistant U.S. Attorney
California Bar No.: 142947
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-6986
Fax: (619) 546-0510
Email:  Sherri.Hobson@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAVIER MARIN-CAMPOS,<br><br>Defendant. | Case No.  15CR2044-GPC<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR DISCOVERY**<br><br>Date:  October 28, 2016<br>Time:  10:30 a.m. |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Laura E. Duffy, United States Attorney, and Sherri W. Hobson, Assistant United States Attorney, and hereby files its Response in Opposition to the above-referenced motion.

**I.**

## III.

## ARGUMENT

### Defendant's Request for Checkpoint Discovery #1

Citing Rule 16, Defendant seeks an order compelling the production of material in response to 10 discovery requests "related to . . . the Interstate 8 Checkpoint's constitutionality." Federal Rule of Criminal Procedure 16(a)(1)(E) requires the production of items within the possession, custody or control of the government if "the item is material to preparing the defense." As Defendant recognizes, a defendant must make a "***threshold showing of materiality***, which requires a presentation of facts which would tend to show that the government is in possession of information helpful to the defense." (emphasis added). *United States v. Muniz-Jaquez, 718 F.3d 1180, 1183* (9th Cir. 2013). And as Defendant also acknowledges, "conclusory allegations of materiality are insufficient to meet this threshold showing."

But beyond saying that he seeks items "that are material to his defense," defendant has failed to shoulder his burden of presenting ***facts*** which would tend to show that the discovery is "helpful" to his at all. Indeed, it appears that his discovery request is a fishing expedition; it is merely an *opportunity to ascertain* by pretrial discovery *whether* the operation of the checkpoint is consistent with its purported goals." Rule 16 does not afford defendants an "opportunity" to request significant discovery with some hope it may prove helpful. A defendant must make a threshold showing that the discovery would be helpful, which this defendant has not done.

In attacking the constitutionality of the checkpoint, defendant could offer some random newspaper articles describing contraband seizures and arrests at the checkpoints, but there are several checkpoints in the Southern District. Defendant would not be able to explain why these articles, even if they were produced, would bear on the primary purpose of the Interstate-8 checkpoint where he was arrested.

In *United States v. Soto-Zuniga*, No. 14-50529, 2016 WL 4932319 (9th Cir. Sep. 16, 2016), the Ninth Circuit concluded that "whether the primary purpose of the

checkpoint has evolved from controlling immigration to detecting ordinary criminal wrongdoing is a question that is subject to discovery under Rule 16." *Id.* at \*7; *id.* ("Because the primary purpose of the San Clemente checkpoint was placed squarely at issue by Soto-Zuniga's motion to suppress, defense counsel should have been allowed reasonable discovery relating to this primary purpose."). But the Ninth Circuit never addressed ***the threshold showing of materiality*** that was required to obtain that discovery in the first place.[1] Rather, it focused on whether "defense" in Rule 16(a)(1)(E) meant only items helpful to show the defendant did or did not commit the charged crime, or "sword" discovery that would be helpful to attack the government's conduct of the investigation. ***Soto-Zuniga did not—nor could it—purport to strip Rule 16 of a threshold materiality requirement***. See *Brecht v. Abrahamson*, 507 U.S. 619, 631, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (prior rulings do not serve as binding precedent on issues "never squarely addressed"); *Morales–Garcia v. Holder*, 567 F.3d 1058, 1064 (9th Cir.2009) (explaining that while three judge panels are bound by prior decisions, "the term 'decision' ... encompasses only those issues that are raised or discussed").

While *Soto-Zuniga* did not address whether the defendant had made a threshold showing of materiality, the panel did reject the United States' position that Rule 16(a)(1)(E) does not cover discovery requests that do not go to the factual innocence of a defendant. The United States respectfully believes that part of the opinion is erroneous. For the purpose of preserving the argument for further review in this case, the United States sets forth the arguments that were rejected in *Soto-Zuniga* here.

Rule 16 only requires discovery of items "material to the defense." The Supreme Court considered what this means in *United States v. Armstrong*, 517 U.S. 456 (1996). There, the Supreme Court granted certiorari to determine the appropriate standard for discovery of a selective-prosecution claim. Armstrong contended that he was entitled

---

[1] The parties had briefed it before the appellate panel. But the Court never addressed it.

to the material under then Fed. R. Crim. P. 16(a)(1)(C),[2] which provided in pertinent part:

> "Upon request of the Defendant the government shall permit the Defendant to inspect . . . documents . . ., which are within the possession . . . of the government, and *which are material to the preparation of the Defendant's defense* . . . ."

*Id.* at 461-62 (emphasis added). Armstrong argued that the documents that discussed the Government's prosecution strategy for crack cocaine cases were "material" to the selective-prosecution claim, and that any claim that "results in nonconviction" if successful was a "defense" under Rule 16. *Id.* The Court rejected the claim, concluding that

> in the context of Rule 16 "the Defendant's defense" means the Defendant's response to the Government's case in chief.

*Id.*

The Court went on to state that the term "defense" is not a "sword," but encompasses only the narrower class of "shield" claims, which refute the Government's arguments that the Defendant committed the crime charged. *Id.* The Court noted that this interpretation of Rule 16 ("defense" means an argument in response to the prosecution's case-in-chief) provides a "perceptible symmetry between documents 'material to the preparation of the Defendant's defense,' and, in the very next phrase, documents 'intended for use by the government as evidence in chief at trial.'" *Id.* The Court concluded as follows:

> We hold that Rule 16(a)(1)(C) [now Rule 16(a)(1)(E)] authorizes Defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective-prosecution claims.

*Id.* at 463.

---

[2] Rule 16(a)(1)(C) is now Rule 16(a)(1)(E)(i).

Prior to *Soto-Zuniga*, the Ninth Circuit interpreted *Armstrong* to preclude "sword" discovery requests in *United States v. Chon*, 210 F.3d 990 (9th Cir. 2000). There, one issue on appeal was the district court's denial of a motion for discovery of all materials pertinent to whether the Navy Criminal Investigative Service (NCIS) targeted civilians in violation of the Posse Commitatus Act. In deciding this issue, this Court first discussed *Armstrong* as follows:

> In . . . *Armstrong* . . . the Supreme Court considered the parameters of Fed. R. Crim. P. 16(a)(1)(C) and ruled that Defendants are entitled to the discovery of only those materials that are relevant *to the Defendant's response to the Government's case in chief*.

*Id.* at 995 (emphasis added). ***The Court went on to hold that under Armstrong, the appellants were entitled to the discovery of only those materials relevant to the charges, such that the district court did not err in its ruling***. *Id.*

Nonetheless, if Defendant makes a threshold showing of materiality, *Soto-Zuniga* holds that he is entitled to "reasonable discovery relating to th[e] primary purpose" of the Interstate-8 checkpoint. Specifically, the Court concluded that discovery about "checkpoint search and arrest statistics" were warranted. 2016 WL 4932319 at *5; see also *id.* at *3 ("Soto-Zuniga also filed a motion seeking, *inter alia*, discovery of statistics regarding the number and types of arrests and vehicle searches at the San Clemente checkpoint."); *id.* at *5 ("We first address Soto-Zuniga's argument that the district court abused its discretion in denying his motion for discovery of the San Clemente checkpoint search and arrest statistics."); *id.* at *6 ("the district court concluded that the checkpoint was constitutional and denied further discovery of the search and arrest statistics"); *id.* at *7 ("We reverse the district court's denial of the discovery motion relating to the checkpoint's arrest statistics."). The Court did not specifically address discovery requests beyond such statistics.

Here, many of Defendant's requests exceed the scope of what was discussed in *Soto-Zuniga* and demand discovery that is not "reasonable." Defendant also seeks

information that is not in the government's possession, custody, or control, or that should be protected as privileged or law enforcement sensitive. The United States responds to the specific requests as follows: Checkpoint Statistics, Number of Immigration Related Arrests at the Checkpoint, Number of Drug Arrests at the Checkpoint. Defendant seeks statistics showing the number of seizures and arrests made at the Interstate-8 checkpoint relating to narcotics and "all immigration related offenses."

At one point in the future, the United States will provide statistics that identify the total number of seizures of narcotics, the types of narcotics seized, and the number of arrests made at the Interstate-8 checkpoint broken down into "immigration-related" and all other offenses for the period of July 2014 to July 2015. (Defense Requests # 7 and # 8 for the last year prior to defendant's arrest).

**Defendant's Request For Training Materials (#2) and Policies (#3)**

Defendant also seeks training materials for searching for drugs at the checkpoint as well as policies and training materials. These requests otherwise should be denied. As an initial matter, the existence of policies or procedures for drug searches at the checkpoint is immaterial, i.e., it does not tend to prove or disprove the checkpoint's primary purpose. Drugs have long been found in vehicles that sought to pass through the checkpoint. That is a function of its location: near the border, on a major freeway. Like any competent law enforcement agency, the Border Patrol should have policies and procedures to address that reoccurring contingency. To say that tends to identify the checkpoint's principal purpose makes as much sense as saying the existence of a business's sexual harassment policy tends to suggest it is in the business of sexual harassment.[3]

---

[3] Even more off base is defendant's request for policies and training materials about "the detention of individuals within [vehicles referred to secondary inspection], and the search of those vehicles and their occupants, including any written or policy instructions, whether given orally or in writing, regarding the agencies' definition of voluntary consent and procedures for obtaining a person's consent to search his or his

*United States' Response in Opposition*  6  *15CR2044-GPC*
*USA v. MARIN-Campos*

In addition, to the extent any of the materials requested exists, much of it is protected by the law enforcement privilege. "The purpose of the law enforcement privilege is 'to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *S.E.C. v. Gowrish*, No. 09–5883, 2010 WL 1929498, at *1 (N.D.Cal. May 12, 2010) (quoting *In re Dep't of Inv. of City of N. Y.*, 856 F.2d 481, 484 (2d Cir.1988)). "[A]ny and all training . . . related to the drug courier profile and information concerning the use of such profiles in decisions to detain vehicles in secondary inspection," to the extent the request seeks specific details about the training, is not "reasonably" related to the primary purpose of the checkpoint and constitutes sensitive law enforcement techniques and procedures that cannot reasonably be disclosed to persons engaged in crime and their attorneys. Disclosing any such materials will impair future law enforcement efforts.

**Defendant's Request #4 -Presence of Narcotics Officers at the Checkpoint**

The only personnel assigned to work at the Interstate-8 checkpoint during Defendant's stop were employed by the United States Border Patrol. No agent was cross-designated with another agency, and no employee of any other agency was assigned to work at the Interstate-8 checkpoint that day.

The United States opposes Defendant's request for any employee's "previous employment with any other law enforcement agency." The information is not "material," because it may not even "assist . . . in formulating a defense" and will not tend to show the primary purpose of the Interstate-8 checkpoint. *Soto-Zuniga*, 2016 WL 4932319, at *8.

---

vehicle." Mot. at 3. We do not see how any of this remotely bears on identifying the checkpoint's primary purpose.

*United States' Response in Opposition*  
*15CR2044-GPC*  
*USA v. MARIN-Campos*

### **Defendant's Request #5 - List of Equipment and Tools at the Checkpoint**

This request should be denied as it will reveal law enforcement privileged information; dissemination of the checkpoint's capabilities can help drug traffickers design methods to evade those capabilities. Nor will the list bear on the primary purpose of the checkpoint—i.e., it is immaterial. Indeed, the Ninth Circuit has already concluded that preparing for the possibility of drug seizures is appropriate at a checkpoint. *United States v. Soto-Camacho*, 58 F.3d 408, 412 (9th Cir. 1995) ("Likewise here, we cannot say that the stop was improper solely because general intelligence having to do with the movement of drugs was one of the reasons for the timing of the Border Patrol's decision to activate the checkpoint.").

### **Defense Request # 9 -- Information about Sale of Forfeited Items**

The United States will provide records demonstrating that the proceeds of forfeited items are put into a general treasury fund. No revenue from any sale "contributes to the Checkpoint budget."

### **Defense Request # 10 -- Budget Documents**

The United States will provide GAO records about the budget allocated for the checkpoint, where possible. To the extent the defendant seeks more (all documents related to budget justifications), the United States opposes the request as immaterial and unreasonable.

## II.
## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that Defendant's motion be denied to the extent opposed above.

DATED: October 21, 2016

Respectfully submitted,

LAURA E. DUFFY
United States Attorney
/s/*Sherri Hobson*
SHERRI W. HOBSON
Assistant United States Attorney

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. JAVIER MARIN-CAMPOS, Defendant. | Case No.: 15CR2044-GPC<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, SHERRI HOBSON, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Response in Opposition to Defendant's Supplemental Motion to Compel Discovery, Motion to Preserve Evidence, and Motion for Leave to File Further Motions, on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

Jamal S. Muhammad, Esq.                              Attorney for Defendant

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

1. None.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 21, 2016.

                                         */s/ Sherri Hobson*
                                         SHERRI W. HOBSON
                                         Assistant United States Attorney